Clerk, please call the next case. 3-15-0284, Joshua Allenbaugh, Workers' Compensation Comm'n. Counsel, you may proceed. Thank you. May it please the Court. Counsel, my name is Steve Kelley. I am here on behalf of Officer Joshua Allenbaugh on this appeal of the decision of the Illinois Workers' Compensation Commission. It is our position that this decision was wrong by a matter of law. The issue in this case is whether or not my client, on March 5, 2013, was injured in the course of and rising out of employment. It's my position that my client on this day was a traveling employee, and on this day, because of the injury, he sustained a work-related injury. Let me ask you this. What employment-related duties was the officer performing as he was driving to the police department that day? He was going to a training session, which he was required to do, which he normally would not be doing at that time. The duties he was doing was traveling to an ordered training activity. Let's explore that for a second. He's driving his personal vehicle to the police department that day, correct? That is correct. That's what he normally does, right? He drives his car to the police department in the morning, right? Normally, at a different time, for different reasons. So I see your argument that he's ordered or it's mandatory training that he has to go to, right? That's correct, Your Honor. Doesn't he normally have to go to the shift anyway? Is there some optional requirement to go to your shift, or is he required to go to the shift every day? He's required to go to a different shift every day. This was not the same time frame. But how is that any different whether he's required to go to the station for training or he's required to go to the show for his normal shift? What's the difference? He's driving to commute to work. At this time of the driving, he normally would not be out there but for the order, meaning at this time of day, with these hazardous conditions... The weather has nothing to do with it, but if somebody's a traveling employer, he's going to work. My position is this, that his testimony establishes that he would not have went out on this day, at this time, with these conditions, but for this order. He would have been the same thing as if he was going to work on that day. There's no difference. But the facts in this case, at this time, establish that it was a time that they put him out there in a hazardous position. Well, if you work at Walmart and you have to be at work at 8 o'clock in the morning and it's snowing, what's the difference between you having to be there at 8 o'clock in the morning to go to work and him being ordered... I mean, you're ordered to be there at 8 o'clock in the morning to go to work. He's ordered to be at this training session at whatever time in the morning. How is the hazardous weather any part of his employment? It is our position in this case that the hazardous weather and this date is a situation that he would not have been out there but for this order. Well, and the Walmart employee would not be out there either if she didn't have to go to work. If the Walmart employee calls Walmart, Walmart says, I would not go out there. I'm not coming out there. It's hazardous. And Walmart says, no, you have to come in today. Are those the facts in this case? Is that what the officer did? That's not the facts in this case, but in my mind it's analogous to the situation. If that theory were correct, then every employee on every snowy day in the state of Illinois would pick up the phone, call their employer and say, I'm not coming to work because there's icy conditions out there. And if they were told to come to work, they have a worker's comp case. Do you actually believe that's the law? I believe if the employer puts them in a position that's hazardous on a different time than they're normally to come. What does the different time have to do with it? Was it more hazardous at that time than it would have been when he'd gone to his shift? Was there more snow, less snow, more rain, less rain? I don't understand why it would be more hazardous. It's equally as hazardous, no difference. I guess what we're trying to grasp here is, is there a doctrine that says the weather conditions have something to do with this doctrine? What does the weather have to do with anything? The weather's the hazard. And the only time that becomes a compensable risk is if he's a traveling employee and he's engaged in the traveling at the time he's involved in the auto accident. In this particular case, he's not traveling as a traveling employee at the time he's involved, he's just going to work. My position is, and apparently the court disagrees, that the order making him come on a different day, making him going out on a different day, is making him a traveling employee at that time. It's not the normal time, it's not the normal shift. I thought about this case, I've been involved in this case for a long time, I've been questioned by a lot of different justices about this issue. I understand your position and struggle with the theory. I think about the fact that if I have a secretary and I say to her, I need you to come in a different time than you usually come in, we've got to get this brief out, we've got to file this pleading. And if I require her to come out in hazardous weather at a different time of her shift, her regular shift, and say I want you to be here, and if you're not going to be here, I'm going to discipline you. Here's what you're glossing over. What was happening at the time of the accident? Unless I missed something, he's driving his own personal vehicle, correct? He's driving his own personal vehicle. He's not on the clock, he's going to the department that he always goes to. This is a normal commute. The reason that he has to go there, you're conflating the reason and the weather as a compensable injury. It has nothing to do with it. He's in a commute to the police department. It doesn't matter why he was required to go there, that's what he's doing. It's a normal commute. Now, the city of Springfield, which I think you've misinterpreted here, the difference there is very clearly, in the city of Springfield case, the officer's already on the job. He's already clocked in, he's performing his duties, and he's coming back from lunch. Here the officer hadn't got to the department yet, right? He hadn't gone there, he hadn't started the training, he hadn't done anything yet. And I cited Springfield because of the control. The radio was on, and the way I interpret Springfield is that's why they found it compensable, because the city was still in control of... Well, what control did they have that day any more than when he's normally driving for his shift? What control does the city have? You're not suggesting, are you, that when he drives to work, an officer drives to work for his regular shift, he's required to report on his shift, that that's a compensable injury? No, I'm not suggesting that. What I'm suggesting, which the court disagrees with, is that the fact that he was pulled out at a different time, the fact that he was put into a situation in which he testified that he would not have went out but for this order, that makes it a traveling plate. And the court obviously disagrees from the arguments, but that's my position in the case. Okay, let me go out another way. What vehicle was he driving at the time? He was driving his own truck. So he was driving his own private vehicle. Your argument would be that he was not reporting to work. He's a second shift officer. That's correct. And he drives his own vehicle to work for second shift. That's correct. Okay. And so your view is that he's driving his own vehicle to a mandatory training program required of Peoria police officers. And during that drive, he's involved in an accident, right? That is the fact, yes. Okay. So if we're saying he's reporting to work, the accident occurred on his drive to the police station in his own private vehicle, which he does on the second shift all the time. But from that point to Expo Gardens, which I guess was training he had to go to as well? Yes, that's correct. If at that time in his own private vehicle he was involved in the same accident, is that a different situation? Is that a situation that he is, quote, at work? An extended or different place to be at than his normal place of employment? Well, we always have this theory of you've got to touch base first, like at first base, okay, before you can't be compensated on your run to first base, to the workplace. But unless you are a traveling employee. And you're saying in this instance he was a traveling employee because he's not required to touch first base until the second shift. I understand your point, Your Honor. Actually, if those were the facts, I think the learner of justice has a point. Because there they probably figure that he's already engaged in work-related duties. He's at the employment. His day has started, just as the officer in Springfield did. He's already on the clock. Your problem here is the commute, as you know, is generally not compensable. And you're stuck in another world of he's going in his own car to the same place he goes to every day, every morning. The reason he has to be there, I suggest, is not going to carry the day. I'd have a different argument if he was helping someone out at the time, being an officer 24-7. But I don't have those set of facts here. Right, because he wasn't. He wasn't. Under the theory of having to touch base first, the first base, whatever you want to say, if the accident had occurred on the way to Expo Gardens, even though he's in his own vehicle, it would be a different case, wouldn't it? It would be a different case. It would be more favorable under traditional analysis of having to, that you're not covered until you get to quote, quote, quote. It would be a different case. And I'd be feeling a little bit less pressure here this morning than I feel right now. But don't let our questions throw you off. No, Your Honor, in all due respect. We're just trying to pin down the doctor. In all due respect, I understand my position.  I've been questioned a lot on this case, and it's my position that this, and we all disagree in this room, that the fact that he, it's a different time, the fact that they put him in this position from going home, if he gets a base hit, he wouldn't have been at the plate but for this work. Well, we don't know if we disagree. We're trying to flush it out here. I got this funny feeling we do disagree, but that's just my, I guess, a little bit of my Italian heritage. I don't think you want to necessarily infer all of that. The question I have, let's change the facts just a little bit. Okay. He's called by his supervisor and said, oh, by the way, you've got training, police training to do, and it's going to be in Springfield. And you can get your training done and still be back to report at the police station at 245 or whatever second shift begins for the police department. During that trip to Springfield at the police training institute, he's involved in an auto accident. That would be your, what would be your theory? That would be compensable. He's a traveling employee. Different than the set of facts I've had here. He's not going to the regular spot he goes to. He's going to a different location. So it's but for the trainings at the Peoria police station that makes a difference, apparently. In that fact scenario? Yes. According to the argument I'm getting here, I don't agree. I'm not conceding my position. I understand that. But in the hypothetical you gave me, that is the difference between the arguments I'm presenting now and the hypothetical you gave me. In fact, the facts in the case suggest that there was an officer through the testimony of Captain Mitchell, or now he's a commander, that there was an officer going to a trial that they may have possibly compensated when he got injured on the way to testifying at the time of the trial, which fits your scenario of the Springfield trip, in my mind. Well, what is he saying in so many words? That he is being required to drive away from the employer's premises, which arguably falls within the traveling employee. Here, at the moment that he had the accident, he was not being ordered to drive away from the employer's premises. He was going to the employer's premises that he goes to every day. That's the difference. What I like about what you just said is he's required. And that goes a little bit of what I'm saying. He was required ordered to go out on a certain time that he wasn't. But not away from the premises that he goes every day. The purpose of his trip wasn't to report to work to be a policeman, was it? It was training. Okay. Different. He was in different clothes. He was wearing different gear. There was a separate order. It just wasn't as if he got in the car and went to work. So from your perspective, it's just unfortunate that one aspect of the training was at the place he normally goes to to begin his normal police work. Correct. Okay. And there's a different set of circumstances. You just pointed as different than a normal day. And if you look at the testimony, the collection of gear, the different type of gear, the order actually has different things he's supposed to do. And it's established that he'd be disciplined if he didn't go. So basically every time a police officer, paramedic, firefighters are required to show up for training at their station, training, not the regular shift, any accident on the way there would be compensable under your theory, right? Yes. Okay. If it's a different time and they were given an order to be there and they're pulled out and the testimony shows that, but for this order, I wouldn't have went. Okay. And therefore, I respectfully ask you to reverse the decision, Commissioner. Thank you. Thank you, Counsel. You'll have time to reply. Thank you. Counsel, you may respond. Thank you. Good morning. My name is Boyd Roberts. I'm with the Hasselberg, Greedy, Snodgrass, Urban, and Wentworth in Peoria. Our office represents the city of Peoria in this matter. I think your honors in the questioning of counsel touched upon sort of the prevailing idea in these types of cases, and that's that they're extraordinarily fact specific. Let's go back to that example I was messing around with earlier, the Police Training Institute in Springfield. And an accident occurs from Peoria to Springfield. I would have a hard time advising the city not to pay that out as a compensable claim based on the case law. So it's an unfortunate fact that that police training was at the police station, where on the second shift later in the day, he would begin his normal work. Unfortunate for Mr. Allenbaugh in this particular case. But I do think that the case law… So it's fortunate for the city. Correct. And we kid and we jest a little bit, but it's honest. And it's what the cases have come down as, is that little nuanced facts here and there in each case are leading to different outcomes. And the whole litany of these cases, whether you're looking under the retained control or the traveling employee type doctrines, they lead to different results. But in this case, I think it's clear, I think it's very clear that the proper result was reached by the commission and upheld by the circuit court in this matter, which is that Mr. Allenbaugh, Officer Allenbaugh, was not engaged in any activities or duties in furtherance of his employment at the time that he got in this motor vehicle accident. The facts are clear. He was driving to police headquarters on Adams Street, where he normally reported every day for his second shift, 2.45 p.m. shift every day. You also brought up the example later in the day, the training was that he was going to report to Expo Gardens in Peoria later in the afternoon for a second component to the training. And I think that if he had gotten in an accident going there, that may have a different result. Yeah, I think that would bring him within the purview of the City of Springfield case, if you realize that. Because again, the whole difference is stark. In the Springfield case, the officer clocked in, he was already in his work day, half of it was gone when he was driving back to the police department. Correct. That's totally different than somebody driving there to begin the shift. And the other thing about the City of Springfield case is that the officer testified he had pulled over and was tracking a reckless, what he perceived to be a reckless driver, and testified that he had an intention to pursue and issue a ticket to that driver. There was no evidence in this case that Mr. Allenbaugh, even if he had seen the driver that hit him, that he was pulling over or had done something, called into East Peoria PD where the accident occurred, or some other action that may have raised it a level in furtherance of his employment. That's not present here. One other thing about this mandated and this ordered training, I did want to point out that it's part of the record, the specific order. This was not unique to Officer Allenbaugh. There was multiple officers that were required to attend this on that day, and the benefit was that they needed to keep up their licensing, their certification to remain employed as police officers. So while there is a distinct benefit to the respondent, the city, for having their officers properly licensed and certified, there's also a little bit of a personal benefit to Officer Allenbaugh in maintaining his own license to remain employed or to pursue employment. Well, that's true of all training, presumably. Presumably, but some of it's internal and some of it's just to... Oh, wait a minute. It's true of all employment. There's a benefit to the employer of the worker coming to work, and there's a benefit to the worker because he gets paid. So you're just talking about different benefit on both sides, but it's no different than a normal worker. I would concede that point, yes. What he does when he gets there, I mean, you know, it benefits the employer, hopefully, and he gets paid so it benefits him. What's your reaction to his argument that he was required, quote-unquote, to be there? If you're a police officer, then isn't that something, aren't you required to show up for your shift, or is it optional whether you show up for work or not? As any other employee, as the court pointed out, you have to show up for your normal shift. If you have to call in because of illness or because you elect to take a vacation day, those are options also, but you are still required. If you don't show up and an officer, I'm sorry, now Police Chief Mitchell testified at arbitration that if Allenbaugh hadn't shown up to the training, he would have been disciplined similarly to if he hadn't shown up to his normal work shift without providing a valid excuse, acceptable under both. To me, as a person, it may seem rather obvious, distilled to its finest, your entire argument is traveling from home to your place of employment, any accident that occurs is non-compensable. That is the foundation to our position in this case. Without that basis, which has been established by law, we're arguing possibly different things here. But that is clearly the foundation for what the position the city has taken, and I think was correctly ruled upon by the Commission. So there's no merit to the purpose of travel? I'm trying to summarize some of my hypotheticals. I think the question you asked is fairly broad in terms of there is merit depending on the nature of the employment. In this case, there's merit in him traveling because the city gets the benefit of the employee showing up to work. But that's the case for any employer. In terms of for a traveling employee or someone that's an employee where an employer has retained control over them beyond when they go to and from work. Isn't the distinction whether he is traveling from his home to his regular place of employment, versus he has been ordered to go somewhere other than his regular place of employment, in which case he assumes the role of a traveling employee from the time he leaves his house till the time he gets there? That's the Budlove case in a nutshell, which is the one where the officer had to travel to a junior college, and by the way, drove a department-issued vehicle for purposes of that training. And again, that goes back to the position where this is extraordinarily fact-specific. And unfortunately for Mr. Allenbaugh, the city of Peoria does not believe that the facts support their position in this case. We believe that the Commission correctly decided this. We believe that the petitioner responded to not retain sufficient control over the petitioner at the time of the accident, and we believe the petitioner was not a traveling employee. Traveling to and from work, personal vehicle, not reimbursed for travel, not aided in making travel arrangements, and was performing no act in furtherance of his duties. So based on that, we'd ask that this Court affirm the decision of the Commission and the Circuit Court. And unless the Court has any more questions for me? No, I don't believe there are. Thank you, Counselor. Thank you. Counselor, you may reply. Thank you. Very briefly, and since this is recorded, I want to make sure that people don't think I'm completely off-base here. An arbitrator agreed with me, one of the Commissioners agreed with me, and dissented in the decision. What I'm asking you to do has some merit. When you talk and ask questions of Counsel about the normal shift, my position, this wasn't a normal shift. This was something different. Same place, by the set of facts, he's going to the same building by chance that he was going to on a regular day, but it is not a normal shift. This isn't a normal day for him, this isn't a normal time, and he would not want to be out there before this order. Thank you. Thank you, Counsel. Thank you, Counsel, both, for your arguments in this matter this morning. It will be taken under advisement, and a written disposition shall issue.